OPINION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MELVIN OMAR ORTIZ, | § | |
| Movant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-08-455 |
| | § | (CRIMINAL NO. B-06-1024) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Melvin Omar Ortiz (Ortiz) brings before the Court the present Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docket No. 1). The request for relief should be DENIED for reasons explained below.

## BACKGROUND

On November 30, 2006, Ortiz pleaded guilty, in the Southern District of Texas, Brownsville Division, to being an alien unlawfully found in the United States after deportation, having previously been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). On March 7, 2007, United States District Judge Hilda G. Tagle sentenced Ortiz to fifty-seven months in the custody of the Bureau of Prisons to be followed by a three-year term of supervised release without supervision and remitted a special assessment fee of one hundred (100) dollars. No fine was imposed. Ortiz filed a timely appeal that the Fifth Circuit Court of Appeals dismissed as frivolous on March 13, 2008. Ortiz then filed the instant § 2255 motion on October 27, 2008, and the United States filed its response on May 18, 2009.

## ALLEGATIONS

Ortiz makes at least nine claims that can be separated into three categories: (1) he claims that the trial court lacked jurisdiction to convict and sentence him; (2) that his counsel provided ineffective assistance arising to constitutional injury; and (3) a misapplication of the sentencing guidelines.

## SECTION 2255 STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, there are four grounds upon which a defendant may move to vacate, set aside or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge is extremely limited, being reserved only for issues of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

## DISCUSSION

### *I. Ortiz timely filed the instant § 2255 motion.*

The Court must determine whether it may properly consider claims brought pursuant to a § 2255 motion before addressing the specific allegations within. The issue of timeliness in filing a § 2255 motion is particularly significant. *United States v. Flores*, 135 F.3d 1000, 1002 (5th Cir. 1998) (addressing as a threshold issue the question of whether or not Movant's § 2255 motion was time-barred).

Title 28 U.S.C. § 2255 provides a one-year time limitation for filing a habeas petition. The limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the Movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A conviction becomes final for § 2255 purposes at the expiration of the direct appellate process. *United States v. Gentry*, 432 F.3d 600, 604 (5th Cir. 2005). The direct appellate process ends when a final judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or finally denied. *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987). Ortiz filed an appeal with the Fifth Circuit that was denied on March 13, 2008, but he did not file a Petition for Writ of Certiorari with the Supreme Court of the United States. In the absence of a Petition for Writ of Certiorari, the judgment becomes final ninety days after the court of appeals enters its judgment. *Clay v. United States*, 537 U.S. 522, 525 (2003). ("[F]or federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires.")

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) Ortiz was required to file a § 2255 petition by June 16, 2009, or one year from the expiration of the time he had to file a Petition for Writ of Certiorari. Ortiz filed the instant motion on October 27, 2008, and so, his motion was timely filed.

## II. *Movant waived the right to appeal or seek collateral review.*

In his plea agreement dated March 7, 2007, Movant waived his right to appeal and to file a § 2255 motion. (Crim. Docket 23). Section 10 of the plea agreement states:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined **on any ground set forth in Title 18 U.S.C. § 3742**. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding, **including but not limited to Title 28 U.S.C. §§ 1651 and 2255.**

Plea Agreement at 4–5 (emphasis in original). If the record "clearly indicates that a defendant has read and understands his plea agreement . . . the defendant will be held to the bargain to which he agreed." *United States v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994). The Fifth Circuit has held that an informed and voluntary appellate waiver should be enforced. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Movant certified in writing that he read the plea agreement and carefully reviewed every part of it with his attorney. Plea Agreement at 9 (Crim. Docket 23). In light of Movant's affirmations that he read, understood, and reviewed the plea agreement with his attorney, the Court is unwilling to release him from the terms of the bargain to which he knowingly and voluntarily agreed. Ortiz waived the right to appeal and only the allegations in his petition not covered by this waiver may be raised in his § 2255 motion.

### *III. Ortiz does not provide cause for failing to present the current claims via direct appeal.*

Ortiz had an opportunity to make all current claims via direct appeal, but failed to raise them at that time. That failure placed the burden on Ortiz to show cause for not so raising them. *United States v. Frady*, 456 U.S. 152, 168 (1982). Moreover, the Supreme Court held that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment because such a judgment must command respect.

> When Congress enacted § 2255 in 1948, it simplified the procedure for

4

> making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.

*Id.* at 165. The cause standard required Ortiz to show that some objective factor external to the defense prevented him from raising on direct appeal the claims he now advances. *United States v. Guerra*, 94 F. F.3d 989, 993 (5th Cir. 1996). Some factors constituting cause include: (1) interference by officials that makes compliance with the procedural rule impracticable; (2) a showing that the factual or legal basis for the claim was not reasonably available to the petition at the prior occasion; and (3) ineffective assistance of counsel in the constitutional sense. *Id.* Ortiz failed to provide cause for not invoking the current claims via direct appeal.

The Supreme Court carved out a narrow exception to the cause and prejudice standard discussed above based on the possible miscarriage of justice, but an argument based on miscarriage of justice must establish innocence that contradicts a conviction. *McCleskey v. Zant*, 499 U.S. 467, 495 (1991). The miscarriage of justice exception was carved out for only the most extraordinary of claims, a class in which Ortiz's arguments do not belong.

### *IV. Ortiz's motion also fails on the merits.*

Ortiz makes at least nine claims that can be separated into three categories: (A) he claims that the trial court lacked jurisdiction to convict and sentence him; (B) that his counsel provided ineffective assistance; and (C) a misapplication of the sentencing guidelines by the trial court.

A. The Lack of Jurisdiction Claims

Ortiz claims that his sentence enhancement under Title 18 is unconstitutional because that title is a nullity as a matter of law, and further, because that title is null and void, that the trial court had no jurisdiction to sentence him. Ortiz also claims that 18 U.S.C. § 3231 is unconstitutional on its face because it is part of an unconstitutional and fraudulent enactment.

Ortiz claims that the bills that would eventually become 8 U.S.C. § 3231 never passed both congressional houses. This is not a novel issue that has never appeared before the Court, but is instead the latest attempt at relitigating a well-settled matter in the district. *See United States v. Martinez*, 2006 WL 1293261 (S.D. Tex. May 6, 2006); *Delreth v. United States*, 2006 WL 1849004 (S.D. Tex. June 25, 2007); *United States v. Harbin*, 2007 WL 1849004 (S.D. Tex. June 25, 2007).

Movant argues, as did the movants in the cases cited directly above, that the bills that eventually became Public Law 80-722 never passed both congressional houses. Ortiz claims that the House version of the bill died at adjournment. Then, when the Senate version of the bill passed in the second session of the 80th Congress, and President Truman signed it, it did not become law because it was not passed again by the House.

United States Chief District Judge Hayden Head succinctly explained the factual background that Ortiz now cites as the grounds for his current claim:

> The Senate and the House of Representatives adjourned on July 27, 1947 under a "conditional final adjournment" resolution, S. Con. Res. 33; 93 Cong. Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into a session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment.
>
> (internal citations omitted). As the government acknowledges, when Congress adjourns sine die, unpassed bills die of their own accord.FN4 (internal citations omitted). Thus, the footnotes lend some credence to

> [Movant's] arguments.

> But those footnotes must also be read in context. It is clear from the context that the intended meaning of those words was that the July 1947 recess was not an intrasession recess (which was what the rest of the Appendix referred to), but an intersession recess. That is, although the term "sine die" is used in the footnotes, it was intended to convey that an entire session of Congress was ending, rather than merely having a break in the session. It should not be read as [Movant] reads it, to mean that the entirety of the Congress ended at the time. Instead, only one session did. The text where the footnotes occur make this clear, too, because it indicates that footnotes 4 and 5 refer to the 1st session of the 80th Congress, and the 2nd session of the 80th congress, respectively. Taken in context, those footnotes cannot be read literally to mean that there was an adjournment sine die of that Congress, such that all pending bills died. Moreover, as the government notes, the 80th Congress did not adjourn sine die in July 1947. When the first session adjourned, it did so to a date certain, not sine die. ( See D.E. 36 at 3 and Exhibits A-1 and A-2) (adjournment on July 26, 1947 was until a date certain-January 2, 1948); *see also Kennedy*, 511 F.2d 430, Appx. at n. 4 (Congress adjourned in July 1947 until January 2, 1948).

*United States v. Martinez*, 2006 WL 1293261, at *5 (S.D. Tex. May 6, 2006)*.* Ortiz presents no argument or evidence that would warrant a reexamination of the issue.

<u>B. The Ineffective Assistance of Counsel Claims</u>

Ortiz also claims that his trial and appellate counsel were ineffective.  Specifically, Ortiz argues that his trial counsel should have: (i) objected to §1326(b) being used to enhance Ortiz's sentence; (ii) obtained a fast track downward departure, (iii) notified the Mexican consulate*,* (iv) not conspired against Ortiz with the prosecutor; and (v) challenged the jurisdiction of the Court.

The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* standard also applies to allegations of defective appellate counsel.  *See Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995).  A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland v. Washington*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 231 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

Additionally "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. at 2067. "Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*  In order to establish that he sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. at 391; *Strickland v. Washington*, 466 U.S. at 694; *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (stating that a Movant must show a reasonable probability that but for his appellate counsel's error, the outcome of his appeal would have been different).

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams v. Taylor*, 529 U.S. at 393 n.17; *Strickland v. Washington*, 466 U.S. at 692.

Because a convicted defendant must satisfy *both* prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong. *See Strickland v. Washington*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 721; *Green v. Johnson*, 116 F.3d at 1122; *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d at 210. Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987), *cert. denied*, 484 U.S. 842 (1987). It is also unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Bates v. Blackburn*; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057 (1987).

Ortiz claims that his trial and appellate counsel were constitutionally ineffective. Specifically, Ortiz argues that his trial counsel should have: (i) objected to §1326(b) being used to enhance Ortiz's sentence; (ii) obtained a fast track downward departure, (iii) notified the Mexican consulate, (iv) not conspired against Ortiz with the prosecutor; and (v) challenged the jurisdiction of the Court.

*i.     Separate Offenses Claim*

8 U.S.C. § 1326(a) and (b) do not constitute separate crimes, and this was well-settled precedent at the time of Ortiz's sentencing hearing. *See Alemandarez-Torres v. United States*, 523 U.S. 224, 235 (1998). An attorney's failure to raise a meritless argument does not evince the ineffective assistance of counsel. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999)

*ii.    The Fast Track Claim*

Ortiz also argues that his trial counsel was ineffective for failing to obtain relief based on the fast track program.[1] Ortiz is mistaken that he did not receive the benefit of participating in the fast track program:

> [AUSA]: Your Honor, in exchange for the defendant's plea to the indictment and waiver of appeal rights as outlined in the plea agreement, . . . the government agrees to recommend a two-point credit under 5K3.1. for an early plea conditioned on the fact that he has no prior conviction of a 1326.

Sentencing Hr'g Tr. at 22 (Docket No. 34). Any claim that Ortiz may have made in the absence of such credit is foreclosed by evidence that he did indeed benefit from the Sentencing Guidelines' provisions for pleading early on in the criminal proceedings instituted against him.

*iii.   The Mexican Consulate*

Ortiz also appears to argue that his trial counsel was ineffective for failing to contact the Mexican Consulate on his behalf. Nevertheless, the Fifth Circuit Court of Appeals has ruled that Article 36 of the Vienna Convention does not create an individually enforceable right. *Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004). Ortiz cannot claim deprivation of a right, as a result of his attorney's conduct, that

---

[1] The Sentencing Guidelines' fast track provision grants a sentencing court the authority to depart downward upon the motion of the Government. See U.S.S.G. § 5K3.1.

10

he was never afforded in the first place.

      *iv.*      *The Conspiracy with the United States*

Ortiz notes in a rather conclusory and passing manner that his attorney conspired, to his detriment, with the Assistant United States Attorney. The Court can glean no such conspiracy from the record, and Ortiz does not provide anything to substantiate this otherwise frivolous claim.

      *v.*      *Failure to Argue Lack of Jurisdiction*

Ortiz erroneously argues that the trial court lacked jurisdiction to convict and sentence him based on a perceived unlawful method of ratification. Any such claim is completely meritless as the Court has already explained in earlier parts of this opinion. An attorney's failure to raise a meritless argument does not evince the ineffective assistance of counsel. *Kimler*, 167 F.3d at 893

### B. The Misapplication of the Guidelines Claim

Ortiz makes the final claim that the trial court misapplied the sentencing guidelines in determining his sentence when it enhanced his sentence based on his previous aggravated felony. Nevertheless, a misapplication of the guidelines is not a cognizable claim via a § 2255 motion. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

## CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a Certificate of Appealability (CA), a movant may not appeal to the Fifth Circuit from a § 2255 motion. 28 U.S.C. § 2253(c)(1). A movant may receive a CA only if he makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). To satisfy this standard, a movant must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. *Miller-El,*

11

537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Moreno v. Dretke,* 450 F.3d 158, 163 (5th Cir. 2006).

Although Ortiz has not yet filed a notice of appeal, the Court may *sua sponte* rule on a CA because the district court that denies relief to a movant is in the best position to determine whether the movant has made a substantial showing of a denial of a constitutional right on the issues before the court. To further brief and argue the very issues on which the court has just ruled would be repetitious. *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Ortiz's § 2255 motion the Court is confident that no outstanding issue would be debatable among jurists of reason. In the context of a CA, the Court finds that Ortiz's claims fail to show that reasonable jurists would find that the issues presented are adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484. Although Ortiz's petition raises important issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, a CA should be denied. *Slack*, 529 U.S. at 484.

## RECOMMENDATION

A thorough review of all the files, records, transcripts and correspondence relating to the judgment being challenged conclusively shows that Ortiz is not entitled to the relief sought. Accordingly, the Court RECOMMENDS that the relief sought in Ortiz's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of August 2009.

_____
Felix Recio
United States Magistrate Judge